MATHEW M. MARKEY ET AL. v. GEORGE H. WALDO ET AL.

1. ATTEMPT OF AN ENDORSER TO RELIEVE HIS LIABILITY AS AN ENDORSER.

An endorser of a promissory note is not relieved of his liability as endorser by the execution of a collateral agreement—as part of the same transaction —which merely recites that the note is received in full satisfaction of a certain claim, and that the endorser is given full acquittance of such claim.

2. CONSIDERATION FOR A CONTRACT OF ENDORSEMENT.

The compromise of a disputed claim is sufficient consideration for a contract of endorsement.

3. REFORMATION OF AN INSTRUMENT.

A court of equity will not reform an instrument unless the evidence of a mistake on the one hand, and of an advantage having been taken of it on the other hand, is clear, satisfactory and convincing.

APPEAL from the Court of Common Pleas of Lucas county.

PARKER, J.

This case is here on appeal. The action was brought on certain promissory notes, the principal of which amounted to $2,300, against Waldo and Varney as makers and Lorenzo Corey as endorser, the endorsement upon each note reading as follows :

"I hereby sell and assign the within note to Mathew M. Markey and Catherine Sunders.

LORENZO COREY."

It appears from the pleadings and evidence that the notes were duly protested, so that if the endorsement was sufficient to hold Mr. Corey as endorser all other action necessary in the premises to hold him was taken.

To this petition defendant Corey files an answer. The defendants Waldo and Varney did not answer. I am not sure that they have been served with summons. At all events there is no question in the case in which they are interested. Corey sets forth several defenses. He admits that the notes were given as alleged, and that he endorsed them as alleged and as they appear ; but he says that the endorsement was made under circumstances that should relieve him from liability as endorser. And he says amongst other things, that the endorsement itself, taken in connection with another instrument which is introduced in evidence, and which was executed as a part of the transaction, concurrently with the making of the endorsement, is not sufficient to hold him as endorser. He also says that the endorsement was made without consideration, and that if the endorsement is sufficient in terms to hold him as endorser, it should be reformed ; that it should in fact be an endorsement without recourse upon him as endorser ; that he and the counsel who transacted the business for him and wrote the endorsement and the other contract to which I have made reference, or the other paper, were mistaken about the legal effect of the terms used, and that the endorsees, the plaintiffs here, were aware that they were so mistaken as to the legal effect of the terms used, and that the endorsement was not in fact in accordance with

the oral agreement of which the endorsement, and the other paper were the written evidence; and that the endorsees took advantage of the circumstance and accepted the endorsement, and are now prosecuting a suit upon it, when to do so is inequitable and fraudulent.

In order that this defense may be understood it will be necessary to recite briefly some of the facts surrounding the transaction. In December, 1890, one Whipple and his wife, being the owners of a certain grist mill, which was then in operation as a grist mill, including all the necessary machinery, executed a mortgage upon it to secure an indebtedness of $6,200 to one Bridget A. Taffee. In January, 1892, Corey, the defendant who is interposing this defense, purchased the premises subject to this mortgage from Whipple and wife. On May 18, 1892, Corey by contract sold the machinery in the mill to George A. Waldo and Alden M. Varney, authorizing the purchasers to remove the machinery from the mill. He accepted in payment from them the notes upon which this action is prosecuted, and one other note of $200 which they afterwards paid, and also another note of $500 which has been reduced to judgment, and therefore is not included in the petition. At the same time the purchasers gave to Corey in pledge certain shares of stock in an incorporated company called the Tobacco River Milling & Manufacturing Co., which was located at Clyde, in the state of Michigan, to which place this machinery was removed, and set up in the establishment which was owned and operated by this incorporated company. A contract was formulated between the parties, reduced to writing, setting forth the terms upon which the stock was put in pledge to Corey. On June 10, 1892, the plaintiffs here became the owners of the mortgage of $6,200 upon this property, given by Whipple and his wife to Bridget A. Taffee. The circumstances under which they became the owners it is not necessary to mention. On June 25, Corey applied to Mrs. Sunders, one of the plaintiffs and one of the owners of this mortgage, for permission to remove this machinery from the mill. At the time he made this application to her he made a payment to her of $217, being the interest which had accrued and was due at that time upon this mortgage. There is some controversy as to whether he had, at that time, in fact permitted the removal of this machinery, or whether it was subsequently removed, but the evidence tends to show, and we are inclined to adopt the view, that the machinery was in fact removed after this permission had been obtained. There is some controversy also as to the terms upon which this permission was given—whether it was unconditional, or whether it was coupled with the condition, as insisted upon by the plaintiffs, that Corey should pay this mortgage indebtedness within about sixty days from that date. I may say here that the witnesses testifying upon this subject are Mrs. Sunders, on the one hand, and Mr. Corey on the other, there having been no witnesses to the transaction other than the parties engaged in it. Mrs. Sunders says the permission to remove the mill was given upon the promise of Mr. Corey that he would pay the debt within sixty days. Mr. Corey undertakes to deny this, and to state the matter somewhat differently, but it seems to us that his statement amounts to practically the same thing. He testifies that what he said was that in his opinion the property, with the machinery removed, was worth enough to satisfy the mortgage. At all events, he had pending negotiations for a sale of the property, and said he would be able to sell the property, he felt quite sure, within sixty days, for an amount sufficient to pay off the

mortgage, and that he would then pay it. As I have stated, the mortgage was owned at that time by Mathew M. Markey and Catherine Sunders. There is some question made also as to whether Mrs. Sunders, who signed this release, was authorized at that time to sign on behalf of her brother Markey, the other plaintiff, but we do not find it necessary to pass upon that question. I mention it that counsel may know that we have given it such consideration as we deem necessary. Subsequent to the obtaining of the permission of plaintiffs to remove the machinery, Corey sold his interest in this mill property and conveyed it to another. In 1893 plaintiffs began foreclosure proceedings under their mortgage in the circuit court at Detroit—a suit under the statute of that state in the nature of strict foreclosure, as we understand it. They brought the property to sale, and on October 30, 1893, plaintiffs bid off the premises for $7,040.41, which is an amount in excess of the amount that was then due upon the mortgage. In this proceeding the plaintiffs seem to have undertaken to sell not only the real estate then remaining but the machinery which had been removed. The description of the property · in the publications authorized and required by the statutes of Michigan was the same as that contained in the mortgage, and the mortgage specifically described the machinery belonging to the mill, and having been given at the time the machinery was in the mill, of course covered it. The question of the legal effect of this proceeding is debated before us and has been considered by us so far as deemed necessary.

It is contended upon the part of Corey that this amounted to a satisfaction of the debt. On the other hand it is contended that since the proceeding had the effect of conveying the title to the machinery which had been removed as well as to the property remaining, that a claim on account of the machinery, either to recover the machinery itself, or to recover from Corey on account of the removal of the machinery, still existed after the foreclosure sale.

It appears that after the plaintiffs had purchased this property they caused it to be advertised for sale by a real estate agency, and it was brought to sale and sold for about $4,500. Some days prior to May 5, 1894, Mr. Palmer, as the attorney for the plaintiffs, wrote a letter to Mr. Corey, who appears at that time to have been a resident of Detroit, demanding of him the return of this property which had been removed from the mill, or pecuniary satisfaction on account of its removal. Mr. Corey applied to his attorney, Mr. Weeks, of Detroit, to look after his interest with respect to this matter. Negotiations were then begun between Mr. Weeks as the representative of Mr. Corey, and Mr. Palmer as the representative of the plaintiffs here, to settle the matters in difference between these parties. As a result of that these notes, which had been given by Waldo and Varney upon the purchase of this machinery, excepting one which had been paid to Mr. Corey, were turned over to Mr. Palmer for his clients, the plaintiffs here, and with the notes the contract with respect to the stock which had been placed in pledge, and also the stock. I have already read the endorsement which was put upon the back of these notes and signed by Mr. Corey, at the time they were turned over, and I will now read the other paper which I have mentioned, which was executed by the parties as a part of the same transaction. It is as follows:

" Received of Lorenzo Corey an assignment of all his right, title, and interest in and to a certain contract made and entered into on the

Markey et al. v. Waldo et al.

eighteenth day of May, 1892, between said Lorenzo Corey of the first part and George H. Waldo and Alden M. Varney of the second part, in regard to certain mill machinery and shares of stock to the number of 500 in the Tobacco River Milling and Manufacturing Company, of Clare, Michigan ; and also four certain promissory notes bearing date May 18, 1892, three of which are for $600 and one for $500, made by the said George H. Waldo and A. M. Varney, the same being in full compromise and satisfaction of all claims of whatever kind growing out of the sale of said mill machinery by said Corey to said Varney and Waldo, whether such claim is made by Catherine Sunders or Mathew M. Markey or any other person connected with the transaction ; hereby giving to said Lorenzo Corey full acquittance from all such claims in consideration of the aforementioned assignments."

Dated May 5, 1894.

(Signed by the parties.)

It is conceded, and it is clear that it is so, that the form of this endorsement is sufficient, with nothing else, to hold Mr. Corey as an endorser of negotiable paper; but it is contended that the endorsement taken in connection with this paper which I have just read would not hold Mr. Corey as an endorser. We are unable to take that view of the matter. We think there is nothing in this acquittance, this release, which releases Mr. Corey from his personal liability as endorser; that this is made clear by the last clause which I have read : " Hereby giving to said Lorenzo Corey full acquittance from all such claims in consideration of the aforementioned assignments." Those assignments and the transaction referred to are the assignments appearing upon the back of these notes, upon which he is clearly bound under the law.

An action was afterwards brought upon one of these notes—the first one falling due—in the circuit court of Michigan at Detroit, and this same question as to the legal effect of these papers—the endorsement and the receipt or release was presented to that court ; and that court as well as the Supreme Court, ( to which the case was afterwards taken,) took the view that this court takes of the legal effect of those writings. Judgment was rendered in that court against Mr. Corey on this first note as endorser, and it was afterwards collected. On account of the collection of that judgment Mr. Corey also asks some relief in his answer and cross-petition in this case. He proceeds to say, as I have indicated, that the real agreement between the parties which they undertook to reduce to writing at the time of this endorsement by writing and signing this receipt or acquittance, was that these notes with the collateral security were to be turned over to the plaintiffs in satisfaction of their claim, and that he was not to be held personally responsible. And he says therefore that these endorsements should be reformed so as to exonerate him, and that he should be permitted to recover back the amount which was recovered from him and collected by virtue of the judgment in the circuit court of Michigan.

We have not deemed it necessary to inquire particularly into or resolve the question whether the release of the machinery from the mill was effective as against the plaintiffs to the extent that they could not enforce a claim for damages against Corey for its removal, or, on account of his failing to return it ; nor have we deemed it necessary to determine whether or not, by the sale under foreclosure, the debt was actually satisfied. We incline to the view (and I need not take time to discuss

the reasons which lead us to that view) that the debt was not satisfied by the foreclosure proceedings. However that may be, on May 5th, or some days prior to May 5th, this claim was asserted against Corey. It was brought to his attention. He was acquainted substantially with all the facts. Something has been said about the concealment of facts that should have been disclosed to Corey. We find that Corey was either acquainted with the facts, or was in a position to have become acquainted with all the facts bearing upon the question of his liability upon the claim that was being asserted. There being, therefore, a disputed claim, a controversy which was likely to result in litigation, that, without reference to these other questions which have been debated here, amounts to a consideration for the agreement, whether the agreement be that which is asserted by Corey or that evidenced by the papers here. So that the real vital question in the case is whether the agreement made by the parties was correctly reduced to writing. Without taking time to discuss the testimony upon that subject I will say that we are unanimously of the opinion that there was no mistake in the reduction of the terms of this agreement to writing; that the writing correctly expresses the agreement of the parties. The only witnesses who have testified as to this are Palmer, upon the one hand, as the representative of the plaintiffs, and Weeks, upon the other hand, as the representative of the defendant Corey. Mr. Weeks testified as a man of very uncertain memory. And it is apparent from many things which he testified to, which were afterwards cleared up by the testimony of other witnesses, that his recollection is very faulty indeed. He does not pretend to give the conversation between himself and Mr. Palmer as to the terms of this contract before it was reduced to writing. He does undertake to say that it was his purpose to so formulate the contract as to exonerate Mr. Corey from personal liability—that that was his intention all along; and his understanding of the result of the conversations and the substance of them, between himself and Mr. Palmer was that these notes with the collateral security were to be turned over in satisfaction of this claim. Mr. Corey testifies on the subject as to what his intention was and as to what his instruction to his attorney was, and as to some controversy or discussion as to the meaning of the terms used in these endorsements that occurred between him and his attorney. But that we are obliged to discard as incompetent. Whatever the intention of Mr. Corey may have been in respect to this matter, whatever the intention of Mr. Weeks may have been, which perhaps he may have undertaken to express, it is clear to our minds that Mr. Palmer, as the representative of the plaintiffs here, never intended that Mr. Corey should be exonerated from personal liability, and never understood that it was the purpose or intention of Mr. Weeks to so formulate the contract as to exonerate Mr. Corey. We are brought to that conclusion not only from a consideration of what he says on the subject, but from the circumstances. At the time that Mr. Palmer applied to Mr. Weeks as the attorney of Mr. Corey it appears that he was not aware where this machinery had been taken to or what had become of it; he was not aware who the purchasers of the machinery were. He became advised of that in the course of the negotiations. It does not appear that he had any information as to the financial responsibility of the makers of these notes or any information as to the value of this stock which was put in pledge. We are fully convinced from the testimony of the parties that he was ignorant upon this subject, and

Markey et al. v. Waldo et al.

therefore it seems to us inconceivable that he should have in that transaction released Mr. Corey, who was known or supposed to be financially responsible, and accepted the notes of parties as to whose financial responsibility he had no knowledge whatever.

The rule upon which a court of equity must proceed when its equitable power to reform a contract is invoked is well understood, and requires the citation of no authority. The evidence of the mistake on the one hand, and of advantage having been taken of it as alleged here, upon the other hand, must be clear, satisfactory, and convincing. The evidence in support of these allegations of the cross-petition falls far short of that. Instead of convincing us of mistake, as it must, in order that we may enter a decree reforming the contract, it convinces us rather that the contract was correctly formulated. And I may mention in this connection that the receipt or acquittance and endorsements were reduced to writing by Mr. Weeks as the attorney for Mr. Corey. We feel bound, therefore, to refuse the prayer of the cross-petition to reform the contract.

There may be some question about the authority of this court to proceed to judgment in the case, but the representatives of both parties have asked that we should do so, however the judgment might be, and therefore judgment will be given upon the notes against the defendant Corey in favor of the plaintiffs for the amount found to be due, and the cause will be remanded to the court of common pleas for execution.

*Geo. A. Chase*, for plaintiffs.
*Wm. H. Harris*, for defendant Corey.